**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:09CV352-MR-DSC**

| | |
|---|---|
| VENUS Y. SPRINGS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MAYER BROWN, LLP AND )<br>JONATHAN A. BARRETT, )<br>)<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM AND RECOMMENDATION<br>AND ORDER** |

**THIS MATTER** is before the Court on "Defendants' Motion to Dismiss" (document #6) filed August 28, 2009 and "Motion for Protective Order" (document #7) filed September 3, 2009; and the parties' associated briefs and exhibits (Documents ##6-1, 6-2, 10,11, 12, and 15).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss the Complaint be granted. The Court will grant leave to Plaintiff to file an Amended Complaint containing sufficient factual allegations to support her race discrimination claims, as discussed below.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

Taking as true the factual allegations of the Complaint, Plaintiff Venus Y. Springs, an African-American female attorney, was employed by the Defendant law firm Mayer Brown LLP ("Mayer Brown") beginning in July 2007 and was terminated a year later, effective September 2008.

Plaintiff was informed in May, 2008 that she would be terminated.

Prior to being hired by Mayer Brown, Plaintiff was employed for five years as a Real Estate and Global Finance Associate with Cadwalader, Wickersham and Taft, LLP. Plaintiff is a <u>Magna Cum Laude</u> graduate of Duke Law School, and has eight years of finance and regulatory experience, including three years as a Bank Examiner with the Office of the Comptroller of the Currency.

When Plaintiff was hired, Defendant Jonathan Barrett, managing partner of Mayer Brown's Charlotte office, and Frank Arado, another partner in the firm, discussed the firm's commitment to pro bono work with her. They reached an agreement to allow Plaintiff flexibility in working from home during after school hours because she is the mother of two young children.

Plaintiff alleges that she was hired, at least in part, because Mayer Brown needed to increase the number of African American attorneys in its Charlotte office. In his year end performance report, Arado stated that one of his 2007 accomplishments was to hire an African-American and two women. Plaintiff further alleges "[u]pon information and belief," that firm documents refer to the hiring of an African American as a "marketing tool."

At the time of her hire, Plaintiff was assigned to work as an attorney in the Real Estate Practice Group, under Arado's direct supervision. At that time, Plaintiff was the only female and only African-American in the practice group, and one of three African-Americans in the Charlotte office.

Plaintiff alleges that during the course of her tenure at Mayer Brown, several partners from Mayer Brown offices outside of Charlotte gave Plaintiff assignments and that "[a]lmost uniformly," these partners gave Plaintiff high marks and praise for her work. Plaintiff also alleges that her performance throughout the time she worked for Mayer Brown was of high quality and exceeded

legitimate expectations. Arado informed her in March 2008 that she had done an "outstanding job" and that he would make her partner, if not by the 2009 selections, then by the 2010 selections.

Plaintiff further alleges that during the course of her employment with Mayer Brown, she was subject to discriminatory terms and conditions, including but not limited to assignment to an office away from her peers, refusal to provide her customary clerical, paralegal and associate assistance, refusal to provide her with training, exclusion from client lunches and other outreach, and refusal to use her pro bono expertise to bolster Mayer Brown's pro bono efforts. Plaintiff alleges she was denied a bonus because the firm refused to credit her pro bono work toward the requisite hours needed for a bonus. Finally, Plaintiff was told that she could no longer work from home at all.

At a meeting held on May 22, 2008, Arado informed Plaintiff of her termination, with the only reason given that clients and partners had "lost confidence" in her. Plaintiff was told she had 90 days to find another job, and that there might be some leeway for an extension. She was instructed to complete all assignments and was absolutely forbidden from telling the summer associates about her termination.

Plaintiff alleges that Mayer Brown's statements about Plaintiff's poor job performance and lack of client satisfaction were false and a pretext for race discrimination. However, Plaintiff offers no direct evidence of discriminatory intent and very little by way of circumstantial evidence. Plaintiff alleges that Mayer Brown offered conflicting characterizations of her termination, that is, contending at different times that she resigned voluntarily, resigned pursuant to a mutual agreement, and was terminated after her position was eliminated. Plaintiff makes generalized accusations that "[t]he Charlotte office of Mayer Brown has a history of discriminating against African American attorneys" and "upon information and belief, only one of [Mayer Brown's] approximately forty

[Charlotte] attorneys was African American."

Plaintiff also alleges that following her termination, Erin Bruenig, a Caucasian attorney in the Real Estate Practice Group, assumed Plaintiff's former responsibilities and duties. On information and belief, Plaintiff asserts that Bruenig was a former Bank of America employee who was hired on a contract basis as a quid pro quo for an increase in firm business from Bank of America.

On May 29, 2009, Plaintiff filed suit in the Superior Court of Mecklenburg County alleging that Mayer Brown discriminated against her on the basis of her race in violation of 42 U.S.C. §1981 ("Section 1981") and state public policy; that Mayer Brown violated the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. §75-1.1 ("UFTPA"); and that both Defendants negligently inflicted emotional distress on Plaintiff.

On August 14, 2009, Defendants timely removed the action from Mecklenburg County Superior Court to United States District Court on the basis that Plaintiff's Section 1981 claim gave rise to federal question subject matter jurisdiction. Said removal has not been challenged and appears proper.

On August 28, 2009, Defendants filed the subject Motion to Dismiss, contending that applying the pleading standards enunciated by the United States Supreme Court in <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007) and <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (May 18, 2009), Plaintiff's factual allegations fail to state claims under § 1981 and state public policy. Defendants also contend that employment disputes are excluded from the scope of North Carolina's UFTPA and that Plaintiff's allegations of intentional discrimination cannot support a claim for negligent infliction of emotional distress.

4

On September 3, 2009, Defendants filed a Motion for Protective Order, asking that discovery be stayed pending resolution of their Motion to Dismiss.

In her Memorandum in Opposition to the Motion to Dismiss, Plaintiff requests that "if this Court determines that there are insufficient pleadings here," she be granted leave to amend the Complaint. Document #11 at 8.

Defendants' Motions have been fully briefed and are, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIM

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this standard. First, the court identifies allegations that, because they are no more

5

than conclusions, are not entitled to the assumption of truth. 129 S. Ct. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1951 (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true), citing Twombly, 550 U.S. at 554-55. Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, when there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id., quoting Fed. R. Civ. P. 8(a)(2). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

Applying these principles to the plaintiff's allegation that the defendants had adopted a discriminatory policy permitting "restrictive conditions of confinement" for post-September 11 detainees, the Supreme Court held "the complaint does not show, or even intimate, that petitioners purposefully housed detainees in [restrictive conditions] due to their race, religion or national

origin." Iqbal, 129 S. Ct. at 1952. Accordingly, dismissal was appropriate. Id.

## B. Section 1981 Claim for Racial Harassment

Actions for race discrimination under 42 U.S.C. § 1981 require proof of the same elements as actions brought under Title VII of the Civil Rights Act of 1964. Accord Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989); and Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 910 (4th Cir. 1989). To the extent that Plaintiff complains that she was the victim of workplace harassment prior to and separate from her termination, discussed below, it is well settled that such harassment is actionable only if it is so severe and pervasive as to alter the terms and conditions of the plaintiff's employment and create an abusive working environment. Clark County School Dist. v. Breeden 532 U.S. 268, 269, 121 S. Ct. 1508 (2001); Oncale v. Sundowner Offshore Services. Inc.. 523 U.S. 75, 80, 118 S. Ct. 998 (1998) (recognizing that the law does not establish "a general civility code" nor does it "prohibit all verbal or physical harassment in the workplace").

At most, Plaintiff complains that she was assigned to an office away from her peers, refused "customary" clerical, paralegal and associate assistance, not offered needed training, excluded from client lunches and other outreach, and not allowed to work from home or to participate in Mayer Brown's pro bono efforts as she had been promised. At the outset, the Court notes that Plaintiff has not alleged that non-African-American associates were treated more favorably regarding these matters. As such, Plaintiff fails to plead a prima facie case of racial discrimination. See Skipper v. Giant Food Inc., 68 Fed. Appx. 393 (4th Cir. 2003) (holding that an employer could not be liable for racial discrimination or disparate treatment of African-American workers when workers failed to show that similarly situated co-workers not within the protected class were treated differently). Her "naked assertion" of racial harassment devoid of "further factual enhancement" is insufficient to survive a

7

motion to dismiss. Twombly, 550 U.S. at 555.

As Defendants point out in their brief, absent harassment of a racial or sexual nature, generalized job grievances or personality conflicts are not sufficient to state a claim for discrimination. Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006)(stating that general complaints of rude treatment were insufficient to sustain a hostile work environment claim). As the Fourth Circuit noted in Hawkins v. PepsiCo. 203 F.3d 274, 282 (4th Cir. 2000), the "[l]aw does not blindly ascribe to race all personal conflicts between individuals of different races. To do so would turn the workplace into a litigious cauldron of racial suspicion. Instead, legally sufficient evidence is required to transform an ordinary conflict such as that between [an employee and employer] into an actionable claim of discrimination."

Finally, the insufficiency of the present Complaint is demonstrated by clear case law holding that behavior more egregious than that at issue here, that is, behavior that was at least to some extent racially or sexually objectionable, did not amount to actionable conduct. Jordan v. Alternative Resources Corp.. 458 F.3d 332, 339 (4th Cir. 2006) (upholding Rule 12(b)(6) dismissal of an employee's hostile work environment claim where the employee complained of only one racially derogatory remark); Hartsell v. Duplex Products. Inc.. 123 F.3d 766, 768-69 (4th Cir. 1997) (dismissing sexual harassment claim because six verbal incidents over a period of approximately three months was insufficiently severe and pervasive); Hopkins v, Baltimore Gas & Electric Co., 77 F.3d 745, 754 (4th Cir. 1996) (recognizing that infrequent or isolated incidents of inappropriate conduct are not severe or pervasive as a matter of law).

For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted as to Plaintiff's claim for racial harassment.

## C. Section 1981 and Public Policy Claims for Wrongful Termination

Regarding Plaintiff's state public policy claim, North Carolina courts "look to federal decisions [in Title VII cases] for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." N.C. Dept. of Correction v. Gibson, 308 N.C. 131, 136, 301 S.E.2d 78, 82 (1983). Accord Henson v. Liggett Group, Inc., 61 F.3d 270, 277 (4th Cir. 1995); Phillips v. J.P. Stevens & Co., Inc., 827 F.Supp. 349, 353 (M.D.N.C. 1993) ( "[t]he public policy of North Carolina expressed in N.C.G.S. § 143-422.1 et seq. is essentially identical to the public policy articulated in Title VII"); and Brewer v. Cabarrus Plastics, Inc., 146 N.C.App. 82, 551 S.E.2d 902, 904 (2001).

Applying the Supreme Court's two-step process for determining whether a complaint alleges sufficient facts to survive a motion to dismiss, it is clear that there are insufficient allegations to support Plaintiff's wrongful termination claims, which, therefore, must be dismissed. As Defendants point out in their briefs, the Complaint contains conclusory allegations of race discrimination. There is, however, very little by way of "well-pleaded factual allegations" supporting those conclusions or the underlying claims.

When the conclusory allegations are appropriately disregarded, see Iqbal 129 S. Ct. at 1950, Plaintiff's remaining factual allegations do not support a plausible claim for relief. Not only has Plaintiff failed to plead prima facie case of racial discrimination, but her factual allegations suggest an "obvious alternative explanation" that does not support her discrimination claims. Iqbal, 129 S. Ct. at 1951-52.

Plaintiff alleges that she was hired in July 2007, "in whole or in part, because [Mayer Brown's] Charlotte office needed to increase its number of African-American attorneys," but that less

9

than a year later she was discharged based on her race. Plaintiff offers no "plausible" explanation why the same decision makers, who allegedly hired her in part because of her race, would be motivated a short time later to terminate her employment because of her race. As the Fourth Circuit consistently has made clear, "where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." Proud v. Stone, 945 F.2d 796, 797-98 (4th Cir. 1991) (affirming dismissal of the plaintiff's discriminatory discharge claim where the plaintiff could not overcome the significant same-actor inference). Plaintiff states that Mayer Brown replaced her with a Caucasian attorney, but not because of her race, but as "a *quid pro quo* for an increase in business" from that attorney's former employer. Taken as true, this factual allegation directly contradicts Plaintiff's conclusory allegations that Mayer Brown terminated her employment because of her race and instead suggests that Mayer Brown terminated her employment for reasons wholly unrelated to her race.

While, as Defendants concede, Plaintiffs remaining factual allegations may support an inference at the pleading stage that Mayer Brown broke its alleged promises to her concerning working from home and pro bono work, there are no other factual allegations that show Mayer Brown acted out of a racially-motivated animus or that otherwise support her termination claims.

In short, Plaintiff has not alleged any factual content that would "nudge" her claims of purposeful discrimination and wrongful termination "across the line from conceivable to plausible." Iqbal, 129 S.Ct. at 1952, quoting Twombly, 550 U.S. at 570. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted as to Plaintiff's wrongful termination claims.

### D. Section 1981 Claim for Disparate Treatment

The Complaint also contains an allegation that Plaintiff was denied a bonus because the firm refused to credit her pro bono work toward the requisite hours needed for a bonus. The record is unclear whether Plaintiff intends this allegation to support a separate claim for disparate treatment. However, for the same reasons discussed above, she has also failed to plead sufficient facts to support a racially disparate treatment claim.

### E. UFTPA Claim

To prevail on her UFTPA claim, Plaintiff must show: (1) that Mayer Brown committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that she suffered actual injury as a proximate result of the alleged unfair or deceptive act or practice. Canady v. Mann, 107 N.C. App. 252, 260, 419 S.E.2d 597, 602 (1992); Ellis v. Smith-Broadhurst, Inc., 48 N.C. App. 180, 184, 268 S.E.2d 271, 273-74 (1980). The legislative intent behind the UDTPA was to ensure high ethical standards in dealings between businesses and the consuming public. Hardy v. Toler, 288 N.C. 303, 309, 218 S.E.2d 342, 346 (1975). Pursuant to the Act itself, a trade practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive if it "has the capacity or tendency to deceive." Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 263-66, 266 S.E.2d 610, 621-22 (1980), overruled in part on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 374 S.E.2d 385 (1988).

Plaintiff does not allege that she was injured in her capacity as a consumer, which is the relationship the legislature intended to protect in the UFTPA. Hardy, 288 N.C. at 309, 218 S.E.2d at 346. Rather, Plaintiff alleges that she was injured in her capacity as an employee. It is well settled in North Carolina that the employer-employee relationship does not fall within the intended scope

of N.C. Gen. Stat. §75-1.1 because "[e]mployment practices fall within the purview of other statutes adopted for that express purpose." <u>Buie v. Daniel Int'l Corp</u>.. 56 N.C. App. 445, 447, 289 S.E.2d 118, 119-20 (1982). <u>See also</u> <u>Schlieper v. Johnson</u>, ___ N.C. App. ___, ___ 672 S.E.2d 548, 555 (N.C. 2009) (UFTPA does not apply to employment relationship). The undersigned respectfully recommends that the Motion to Dismiss be <u>granted</u> as to this claim.

### F. **Negligent Infliction of Emotional Distress**

To state a claim for negligent infliction of emotional distress, Plaintiff must allege that: (1) Mayer Brown and Barrett negligently engaged in conduct; (2) it was reasonably foreseeable that such conduct would cause Plaintiff severe emotional distress; and (3) the conduct did in fact cause plaintiff severe emotional distress. <u>Johnson v. Ruark Obstetrics & Gynecology. P.A</u>.. 327 N.C. 283, 304, 395 S.E.2d 85, 97 (N.C. 1990). The law is clear, however, that inherently intentional conduct, such as discrimination, cannot support a claim for negligent infliction of emotional distress. <u>Mitchell v. Lydall Inc</u>.. 16 F.3d 410, 1994 WL 38703 (4th Cir. 1994) (allegation of intentional employment discrimination will not support negligence claim); <u>Thomas v. Northern Telecom</u>. 157 F. Supp.2d 627 (M.D.N.C. 2000) (holding that an employee's allegations of discriminatory conduct in the workplace were insufficient to state a claim for negligent infliction of emotional distress); <u>Barbier v. Durham County Bd. of Education</u>, 225 F. Supp.2d 617, 631 (M.D.N.C. 2002) (granting judgment on the pleadings and holding under North Carolina law that, when complaint alleges acts of intentional discrimination, same acts cannot support claim for negligent infliction of emotional distress). Accordingly, the undersigned respectfully recommends that this claim be dismissed.

12

### III. ORDER

**IT IS HEREBY ORDERED** that Plaintiff is **GRANTED** leave to file an Amended Complaint containing factual allegations sufficient to support her race discrimination claims. Said Amended Complaint, if any, shall be filed on or before November 6, 2009.

**IT IS FURTHER ORDERED** that Defendants' "Motion for Protective Order" (document #7) is **GRANTED**, that is, all discovery is **STAYED** pending the District Court's ruling on this Memorandum and Recommendation and Order.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the "Defendants' Motion to Dismiss" (document #6) be **GRANTED** and that Plaintiff's Complaint be **DISMISSED**.

### V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109

F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Martin Reidinger.

**SO ORDERED AND RECOMMENDED**.

Signed: October 20, 2009

_____
David S. Cayer
United States Magistrate Judge