## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

## CIVIL CASE NO. 3:09cv352

| | | |
|---|---|---|
| **VENUS Y. SPRINGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | <u>**MEMORANDUM OF**</u> |
| | ) | <u>**DECISION AND ORDER**</u> |
| **MAYER BROWN, LLP and** | ) | |
| **JONATHAN A. BARRETT,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss [Doc. 6]; the Plaintiff's Objections [Doc. 17] to the Memorandum and Recommendation [Doc. 16] of the Honorable David S. Cayer, United States Magistrate Judge; and the Defendants' Motion to Dismiss First Amended Complaint [Doc. 19].

## I.    PROCEDURAL BACKGROUND

The Plaintiff Venus Y. Springs initiated this action against the Defendants Mayer Brown, LLP ("Mayer Brown") and managing partner

Jonathan A. Barrett ("Barrett") by filing a Complaint in the Mecklenburg County General Court of Justice, Superior Court Division, asserting a claim for wrongful termination based on race in violation of 42 U.S.C. § 1981 and North Carolina public policy; a claim of racial harassment in violation of § 1981; a claim for unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1, et seq. ("Chapter 75"); and a claim for negligent infliction of emotional distress in connection with the wrongful termination of her employment. [Complaint, Doc. 1-2]. The Defendants removed the action to this Court on the basis of a federal question on August 14, 2009. [Notice of Removal, Doc. 1].

Thereafter, the Defendants filed a Motion to Dismiss, seeking dismissal of all four causes of action set forth in the Plaintiff's Complaint. [Doc. 6]. On October 20, 2009, the Magistrate Judge entered a Memorandum and Recommendation [Doc. 16], recommending that the Defendants' Motion to Dismiss be granted and that the Plaintiff's Complaint be dismissed. The Magistrate Judge, however, also granted the Plaintiff leave to amend her Complaint to assert additional factual allegations to support her race discrimination claims. [Id. at 13].

The Plaintiff filed Objections to the Recommendation on November 6, 2009, asserting that the Magistrate Judge erred in recommending that all of her claims should be dismissed. [Objections, Doc. 17]. Along with her Objections, however, the Plaintiff also filed an Amended Complaint, asserting additional factual allegations in support of her racial discrimination claims. [Amended Complaint, Doc. 18]. As the Plaintiff has now re-plead her racial discrimination claims, both the Defendant's Motion to Dismiss these claims and the Plaintiff's Objections to the Magistrate Judge's Recommendation regarding the dismissal of these claims are rendered moot.

In filing her Amended Complaint, the Plaintiff did not reassert her claims under Chapter 75 or for negligent infliction of emotional distress as had been asserted in the original Complaint. [See Amended Complaint, Doc. 18]. Having omitted these claims from her Amended Complaint, the Plaintiff is deemed to have waived these claims. See Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001). As such, both the Defendants' Motion to Dismiss these claims as well as the Plaintiff's Objections to the Magistrate Judge's Recommendation with respect to these claims are also moot and shall not be considered further.

The Defendants now move to dismiss the Plaintiff's Amended Complaint.  [Doc. 19].  The Plaintiff has filed her opposition to the motion to dismiss [Doc. 21], and the Defendants have filed a reply brief [Doc. 22].  These issues having been fully briefed, this matter is now ripe for disposition.

## II.    STANDARD OF REVIEW

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so that the defendant may have "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  A defendant may challenge the legal sufficiency of a complaint by way of a Rule 12(b)(6) motion.  See Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).  In reviewing such a motion, the Court must assume the facts alleged in the complaint to be true.  Eastern Shore Markets, Inc. v. J.D. Associates Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).  While all well-pleaded factual allegations must be taken as true, the Court "need not accept the legal conclusions

drawn from the facts," or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations and footnote omitted). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief," supported by well-pleaded facts, that permits the court "to infer more than the mere possibility of misconduct." Ashcroft v. Iqbal, – U.S. –, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

## III.    FACTUAL BACKGROUND

Taking the allegations as set forth in the Plaintiff's Amended Complaint as true, the following are the relevant facts. The Plaintiff, who is

female and African-American, was hired by the Charlotte office of Mayer Brown in July 2007. [First Amended Complaint, Doc. 18 at ¶¶1, 5]. At the time of her hire, Mayer Brown's managing partner Jonathan Barrett and partner Frank Arado discussed with her the firm's alleged commitment to pro bono work and reached an agreement to allow the Plaintiff flexibility in working from home during after-school hours, as she is the mother of two small children. [Id. at ¶8].

The Plaintiff was assigned to work as an associate attorney in the Real Estate Practice Group, under the direct supervision of Frank Arado. At that time the Plaintiff was the only female and the only African-American in the group, which had four other associate attorneys, all of whom were Caucasian. [Id. at ¶9]. At the time of her hire, the Plaintiff was only one of three African-American attorneys in the Charlotte office of Mayer Brown, which at that time had approximately fifty attorneys. [Id. at ¶10].

During the time she worked for Mayer Brown, the Plaintiff's performance was of high quality and exceeded her supervisors' expectations. [Id. at ¶¶11, 12]. The Plaintiff possessed skills that no other attorney in the Charlotte office had, such as knowledge of mezzanine lending. She is also bilingual. [Id. at ¶13]. Arado often asked the Plaintiff

for advice on transactions involving mezzanine lending and for her assistance in interpreting mezzanine loan agreements. [Id. at ¶14]. In March 2008, Arado told the Plaintiff that she had done an "outstanding job" and that he would recommend her for a partnership in either 2009 or 2010. [Id.].

The Plaintiff was the only real estate attorney who was given an office away from the Real Estate Practice Group. She was given the smallest office of all of the real estate attorneys. The office was also an odd shape, and she had to "beg" to get an alternative furniture arrangement so that she could see the door of her office while sitting at her desk. [Id. at ¶17].

The Plaintiff was ostracized by Arado and her male co-workers. Arado would only speak to the Plaintiff directly on a limited basis, communicating with her instead primarily by email. By contrast, Arado spoke with the Plaintiff's Caucasian co-workers frequently face-to-face. When the Plaintiff circulated an email to members of the Real Estate Practice Group offering assistance on their work, she received a response from a co-worker, saying that she could go out and get a Coke for him. The Plaintiff showed this email to Arado, but no apology was ever

forthcoming.  [Id. at ¶18].  The Plaintiff also was ostracized by the other Mayer Brown partners, who refused to respond to her emails.  [Id.].

The Plaintiff was denied customary paralegal and associate assistance in completing her work.  For example, when she asked for associate assistance on certain deals, it was not provided to her.  Her Caucasian co-workers received much more assistance from paralegals and other attorneys.  For example, when the Plaintiff traveled to Atlanta with a paralegal to assist in closing a deal, she observed that the two opposing sides had no less than three partners each and numerous associates working on the closing.  [Id. at ¶19].

At one point, Arado and Barrett decided to take away the Plaintiff's legal secretary.  The Plaintiff, however, was able to get this decision reversed.  [Id. at ¶20].

The Plaintiff was excluded from pro bono activities, and her expertise and experience in pro bono work was ignored.  The Plaintiff previously had served as a board member of the Low Income Tax Clinic of the Legal Services of the Southern Piedmont.  When Mayer Brown decided that junior associates should participate in the Low Income Tax Clinic, however, the Plaintiff was ignored and was not even asked about the project.  Her

emails to those attorneys interested in working on the project went unanswered.  [Id. at ¶ 21].

The Plaintiff was not invited to four client lunches, despite the fact that Plaintiff's white co-workers were invited.  [Id. at ¶¶22, 36].

The Plaintiff was denied a bonus when Mayer Brown refused to credit her pro bono work toward the requisite hours needed for a bonus, in violation of the firm's explicit commitment to her at the time of her hire. Additionally, the Plaintiff was told that she could no longer work from home. [Id. at ¶24].

On May 22, 2008, Arado informed the Plaintiff that she would be terminated.  The only reason he gave was that clients and partners had allegedly "lost confidence" in her.  [Id. at ¶26].   When the Plaintiff asked Arado to identify which clients had lost confidence in her, Arado named R.S., a Wachovia employee, and DVU, a Chicago client.  Both of these clients, however, had told the Plaintiff that she had done a good job.  [Id. at ¶27].  When the Plaintiff told Arado that he was wrong, he replied, "I didn't say that you didn't do a good job."  [Id. at ¶26].  The Plaintiff was told that she had 90 days to find another job, that there might be some leeway for an extension, that she was to complete all assignments, and that she was

forbidden from telling the summer associates about her termination.  [Id.].
Even after notifying the Plaintiff of her termination, Arado continued to seek
advice from the Plaintiff about lending and other areas of the law in which
he lacked expertise.  [Id. at ¶28].

Mayer Brown falsely characterized her termination as both a
voluntary resignation and as a mutual agreement that she resign.  [Id. at
¶29].  Mayer Brown also falsely contended that the Plaintiff's position had
been eliminated; however, within weeks of the Plaintiff leaving her
employment in September 2008, three new attorneys were added to the
Real Estate Practice Group, all of whom were Caucasian.  [Id. at ¶¶30, 32,
39].  One of these attorneys was Erin Breunig, a former Bank of America
employee, who was hired as a *quid pro quo* for an increase in business
from Bank of America.  The Plaintiff alleges that the hiring of Breunig for
this purpose was tantamount to commercial bribery.  [Id. at ¶39].

Mayer Brown hired African-Americans as a "marketing tool" in order
to increase business from clients who expressed diversity as a value.  The
first African-American was hired by the Charlotte office in 2003.  After this
attorney was hired, however, he was denied work in his area of expertise
because the partners who gave out work assignments were not

comfortable communicating with an African-American.  No additional work was provided to this attorney, and he was eventually asked to leave.  Prior to the end of his employment, this attorney saw a note in his personnel file, which indicated that he had been hired as a "marketing tool."  [Id. at ¶33].

Prior to the Plaintiff's hiring, at least one major client had identified the firm's lack of diversity as a weakness.  [Id. at ¶35].  Upon her hire, the Plaintiff was asked to attend on behalf of Mayer Brown bar meetings and other functions where diversity would be perceived as a positive.  These were the only type of functions that the Plaintiff was asked to attend, however.  [Id. at ¶36].  The need for racial diversity appeared to dwindle during the Plaintiff's time at Mayer Brown.  In the Spring of 2008, Arado told the Plaintiff that he had previously thought that  Bank of America, one of Mayer Brown's largest clients, valued diversity and would be happy that Mayer Brown had hired her but that he had changed his mind as he realized that "they really didn't care about diversity."  [Id. at ¶37].

The Plaintiff's employment with Mayer Brown ended in September 2008.  Upon the Plaintiff's termination, her duties were taken over by one of the three new Caucasian attorneys who had been recently added to the Real Estate Practice Group.  [Id. at ¶¶38, 39].

## IV.  DISCUSSION

In their Motion to Dismiss, the Defendants seek the dismissal of the claims asserted in the Amended Complaint for wrongful termination in violation of § 1981 and North Carolina public policy and for racial harassment under § 1981.  [Doc. 19].

At the outset, the Court notes that while the Defendant Barrett is listed in the caption of the Plaintiff's Amended Complaint, the Plaintiff has not specifically asserted any cause of action against him.  Both the racial harassment and discrimination claims asserted by the Plaintiff in the Amended Complaint are directed against the Defendant Mayer Brown only. There being no causes of action asserted against Barrett, he will be dismissed as a party to this action.

### 1.    Racial Harassment

In her response to the Motion to Dismiss, the Plaintiff does not defend her racial harassment claim, which she previously acknowledged to be "the weakest of her claims."  [Doc. 11 at 18].  While it appears that the Plaintiff may have abandoned this claim by failing to address the

arguments raised in the Defendants' Motion to Dismiss, the Court will nevertheless proceed to address this claim on its merits.

In order to state a claim based on a racially hostile work environment under § 1981, a plaintiff allege that: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was sufficiently severe or pervasive as to alter the conditions of her employment and to create an abusive atmosphere; and (4) there is some basis for imposing employer liability. Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). To show that the harassment was based on race, a plaintiff "must show that 'but for' her race . . ., she would not have been the victim of the alleged discrimination." Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007) (quoting Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998)). In determining whether the working environment is sufficiently hostile or abusive, the Court must "look[] at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher

v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation and internal quotation marks omitted).

In the present case, the Plaintiff alleges that she was assigned to an office away from her Caucasian peers and that she was given the smallest office of all of the real estate attorneys[1] [Amended Complaint, Doc. 18 at ¶17]; that she was ostracized by Arado in that he would communicate with her primarily by email, while he spoke with the Plaintiff's Caucasian co-workers frequently face-to-face [Id. at ¶18]; that one of her co-workers responded to her offer of assistance by saying that she could go out and get a Coke for him [Id.]; that the other partners in the Charlotte office would refuse to respond to her emails [Id.]; that she was denied customary paralegal and associate assistance in completing her work, while her Caucasian co-workers received much more assistance from paralegals and other attorneys[2] [Id. at ¶19]; that Arado and Barrett at one point

---

[1]The Plaintiff also alleges that her furniture was arranged in such a way in this office so that she was unable to see her own office door from her desk. The Plaintiff admits, however, that the furniture was rearranged upon her request. [Id. at ¶17].

[2]In support of this allegation, the Plaintiff cites an occasion when she traveled to Atlanta to close a deal and was accompanied only by a paralegal. The Plaintiff observed that the opposing sides had no less than three partners each and multiple associates working on the closing. This allegation, even if assumed to be true, does not support the Plaintiff's assertion that her white counterparts at Mayer Brown received more assistance than her from paralegals and other attorneys.

decided to take away her legal secretary (although the Plaintiff concedes that she was able to get this decision reversed) [Id. at ¶20]; that she was excluded from pro bono activities, and her expertise and experience in pro bono work was ignored [Id. at ¶21]; that she was not invited to four client lunches, despite the fact that her white co-workers were invited [Id. at ¶¶22, 36]; that she was denied a bonus when Mayer Brown refused to credit her pro bono work toward the requisite hours needed for a bonus [Id. at ¶24]; and that she was not allowed to work from home, despite the firm's promises to her at the time of her hire [Id.]. These allegations fail to raise a plausible inference that the harassment that the Plaintiff allegedly suffered was racial in nature. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280-81 (4th Cir. 2000) (holding that personal disputes with supervisor, without evidence that harassment was racial in nature, was insufficient to sustain hostile work environment claim).

The Plaintiff contends that these allegations are sufficient to establish a claim of racial harassment, as she has alleged that she was treated this way because of racial animus. She further alleges that her Caucasian co-workers were treated more favorably than her with respect to the location of their offices, the provision of clerical and paralegal assistance,

participation in firm events, bonuses, and the like.  These allegations,

however, are made only in the most conclusory fashion and are therefore

insufficient to raise a plausible inference that she was subjected to such

harassment "because of" her race.  See Iqbal, 129 S.Ct. at 1949

("Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice.").

Additionally, the Plaintiff's allegations fail to raise a plausible

inference that the claimed harassment was so severe or pervasive as to

alter the conditions of her employment and to create an abusive

atmosphere.  Generalized job grievances or personality conflicts are not

sufficient to state a claim for a hostile work environment.  See Baqir v.

Principi, 434 F.3d 733, 747 (4th Cir. 2006) (holding that general complaints

of rude treatment were insufficient to state a hostile work environment

claim); Johnson v. Alternative Resources Corp., 458 F.3d 332, 340 (4th

Cir. 2006) (dismissing hostile work environment claim where complaint did

"not describe a workplace permeated by racism, by threats of violence, by

improper interference with work, or by conduct resulting in psychological

harm").  As the Supreme Court has noted, "simple teasing, offhand

comments and isolated incidents (unless extremely serious) will not

amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788, 118 S.Ct. 2273 (citation and internal quotation marks omitted). At most, the Plaintiff's allegations describe a working environment involving isolated incidents of perceived mistreatment, none of which, when considered singly or in combination, can reasonably be construed as being racial in nature, or as so severe or pervasive as to alter the conditions of her employment or create an abusive atmosphere. For these reasons, the Plaintiff's racial harassment claim will be dismissed.

## 2. Wrongful Termination

The Plaintiff contends that she has pled facts which fully support each element of a prima facie case of race discrimination. [Doc. 21 at 8].[3]

_____

[3]A plaintiff is not required to plead facts that constitute a prima facie case of discrimination under the McDonnell Douglas standard in order to withstand a motion to dismiss. See Swierkiewicz, 534 U.S. at 510-11, 122 S.Ct. 992. While a plaintiff is not required to plead a prima facie case, "[t]he elements of a prima facie discrimination claim are nonetheless relevant to the determination of whether a complaint provides a defendant with fair notice and contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Chacko v. Worldwide Flight Services, Inc., No. 08-CV-2363 (NGG)(JO), 2010 WL 424025, at *3 (E.D.N.Y. Feb. 3, 2010) (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955); see also Orozco v. City of Murfreesboro, No. 3:09-cv-00752, 2009 WL 4042586, at *3 (M.D. Tenn. Nov. 19, 2009) ("it seems reasonable to conclude that a complaint that pleads *facts* in support [of] each element of a prima facie case of discrimination – and not merely conclusory statements to the effect that such elements are satisfied – necessarily meets Iqbal's requirement that the complaint show more than the 'mere possibility of misconduct,' . . . regardless of whether it is technically not necessary to plead every element of a prima facie case of discrimination in order to avoid dismissal under Iqbal").

To demonstrate a prima facie case of race discrimination, a plaintiff must show: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was performing her job duties at a level that was meeting the legitimate expectations of her employer; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007), cert. denied, 552 U.S. 1102, 128 S.Ct. 955, 169 L.Ed.2d 734 (2008).[4]

In the present case, the Plaintiff alleges that she is an African-American [Amended Complaint, Doc. 18 at ¶1], and that she suffered an adverse employment action when she was terminated from her employment [Id. at ¶¶26-32]. These allegations are sufficient to satisfy the first and second elements of a prima facie case of racial discrimination.

---

[4]The Plaintiff contends that she can also satisfy this fourth element by demonstrating that she was fired "under circumstances which give rise to an inference of unlawful discrimination." [Doc. 21 at 9 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)]. While the Fourth Circuit has recognized that there are some circumstances in which a plaintiff may satisfy the fourth element by showing that the totality of the evidence gives rise to an inference of discrimination, the Court also has recognized that proof of replacement by a member outside the protected class is "ordinarily" required. See Miles v. Dell, Inc., 429 F.3d 480, 488 (4th Cir. 2005). Because the Court finds that the Plaintiff has pled sufficient facts to raise a plausible inference that she was replaced by someone outside the protected class, the Court need not address whether the Plaintiff also has alleged sufficient facts to show circumstances giving rise to an inference of discrimination.

With respect to the third element, the Plaintiff provides ample allegations that she was performing in accordance with her employer's legitimate expectations. Specifically, she alleges that she had extensive legal experience in the relevant areas of finance and real estate [Id. at ¶¶6, 7]; that she received excellent performance evaluations; that her supervising partner, Frank Arado, told her that she was doing an outstanding job and indicated that she would be made partner by 2010 [Id. at ¶14]; and that several other partners in the firm praised the high quality of her work [Id. at ¶¶11-13].

In support of the fourth element, the Plaintiff alleges that she was replaced by one of three white attorneys who were hired around the time that her employment ended. [Id. at ¶39]. One of these three new attorneys, Erin Breuning, was a former Bank of America employee, whom the Plaintiff alleges was hired as a *quid pro quo* for an increase in business from Bank of America, an act which the Plaintiff alleges is "tantamount to commercial bribery." [Id.]. The other two attorneys had served as summer associates for the firm and were hired as permanent associates prior to the end of the Plaintiff's employment in September 2008. [Id. at ¶30].

Mayer Brown contends that the Plaintiff's allegations do not plausibly establish that she was replaced by a person outside the protected class. Specifically, the Defendant contends that by the Plaintiff's own admission, the reason that Breunig was hired was not to replace the Plaintiff but to increase the firm's business with Bank of America. Additionally, Mayer Brown argues that these attorneys were hired prior to the Plaintiff's termination and therefore cannot be deemed to have replaced her. Neither of these arguments is persuasive. First, with respect to Breunig, the fact that the Plaintiff has alleged that Mayer Brown had a financial motivation to hire Breunig does not detract from the plausibility of the Plaintiff's allegations that Mayer Brown also had the motivation to hire Breunig, or one of the other two new white attorneys, for the purpose of replacing the Plaintiff once her employment had ended. Furthermore, the fact that these attorneys were hired before the Plaintiff ended her employment is not fatal to the Plaintiff's claim. The Plaintiff has alleged that she was advised of her termination in May 2008 and that she was told that she would be permitted to work for the firm for an additional 90 days. [Amended Complaint, Doc. 18 at ¶26]. Thus, the decision to terminate the Plaintiff had already been made by the time that Mayer Brown hired these new

attorneys for the Real Estate Practice Group. Drawing all inferences in the Plaintiff's favor, as the Court must at this stage in the proceedings, the Court concludes that the Plaintiff has pled sufficient factual allegations to raise a plausible inference that she was replaced by one or more of these new hires.

In short, the Court concludes that the Plaintiff has alleged more than adequate facts to have "nudged" her claim of race discrimination "across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S.Ct. 1955. Accordingly, the Defendants' Motion to Dismiss will be denied as to this claim.


## IV.    CONCLUSION

In light of the fact that the Plaintiff was granted leave to file an amended complaint and has now filed such pleading, the Court concludes that the Defendants' first Motion to Dismiss [Doc. 6] has been rendered moot. As such, the Court need not address the Magistrate Judge's Recommendation regarding the disposition of this motion or the Plaintiff's Objections thereto.

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss [Doc. 6] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Plaintiff's Objections to the Magistrate Judge's Memorandum and Recommendation [Doc. 17] are **OVERRULED** as moot.

**IT IS FURTHER ORDERED** that the Defendant Jonathan A. Barrett is **DISMISSED** as a party to this action, as no claims have been asserted directly against him.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Dismiss First Amended Complaint [Doc. 19] is **GRANTED** with respect to the Plaintiff's claim for racial harassment under 42 U.S.C. § 1981.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Dismiss First Amended Complaint [Doc. 19] is **DENIED** with respect to the Plaintiff's claim against the Defendant Mayer Brown, LLP for racial discrimination in violation of 42 U.S.C. § 1981 and North Carolina public policy.

**IT IS SO ORDERED.**

Signed: June 9, 2010

Martin Reidinger
United States District Judge