IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No. 09-CV-352-MOC-DSC

| | |
|---|---|
| VENUS Y. SPRINGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MAYER BROWN, LLP, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT'S COUNTERCLAIM**

Defendant Mayer Brown, LLP ("Mayer Brown" or the "Firm") files this memorandum in opposition to Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaim ("Plaintiff's Motion")(Dkt. Entry 74):

**I.     Introduction**

Plaintiff Venus Y. Springs, a former associate attorney with Mayer Brown was notified on May 22, 2008, that her employment was being terminated. Rather than being asked to leave the Firm immediately, Mayer Brown permitted plaintiff to stay and remain on the payroll for an additional 90 days. During that 90-day notice period, plaintiff had no work responsibilities or obligations. Rather, it was contemplated that she would take advantage of the 90-day period and focus on securing alternative employment. Plaintiff remained at Mayer Brown until September 2008, but, rather than repay the trust the Firm reposed in her by permitting her to remain, plaintiff systematically went about improperly accessing, copying and printing proprietary and confidential Firm and client information, which she retains in her possession even today.

Contrary to plaintiff's contention in her Motion for Summary Judgment, her actions in accessing, copying, printing and possessing Mayer Brown's confidential and proprietary information constitute an unlawful conversion of property, cognizable under North Carolina law.

## II. Statement of Material Facts

1. Plaintiff started work at Mayer Brown on July 30, 2007, as a real estate associate in the Firm's Charlotte office. (Pl. depo. 26:16-17[1]; Arado Decl. ¶¶ 8, 9[2]).

2. Incident to her employment, plaintiff received and agreed to be bound by Mayer Brown's Electronic Mail, Computer, and Internet Usage Policy ("Computer Usage Policy"). (Pl. depo. 65:4-18, Exhs. 5-6).

3. That policy provides in relevant part that, "The Firm's computer system resources, including electronic mail and Internet services, are provided to all [Mayer Brown] personnel at the Firm's expense for use in conducting Firm business and are the property of the Firm. Therefore all messages created, stored, or retrieved on the system including through electronic mail or the Internet *are considered Firm records*." (Pl. depo., Exh. 5)(emphasis added).

4. The Computer Usage Policy further provides that, "Personnel may not access the files or communications of others when there is no substantial business purpose. Personnel engaging in unauthorized access of files and messages will be disciplined appropriately, which may include termination from the Firm." (Pl. depo., Exh. 5).

---

[1] The testimony and exhibits from plaintiff's deposition on which Mayer Brown relies are appended hereto as Exhibit A.

[2] The Arado Declaration was appended as Exhibit A to Defendant's Motion for Summary Judgment. *See* Dkt. Entry 76.

5.     In addition, "[d]isclosing confidential information without authorization" is expressly deemed an unacceptable use of the Firm's computer system which may result in disciplinary action, including termination. (Pl. depo., Exh. 5).

6.     Upon being hired to work as an associate attorney at the Firm, plaintiff also received and reviewed Mayer Brown's Policy on Maintaining Confidentiality, (Pl. depo. 121:25-122:4), which defines confidential client information as information which is protected by the attorney-client privilege and other information relating to the representation of a client, whatever its source. (Pl. depo. 122:25-123:6, Exhs. 24, 25).

7.     Pursuant to the Firm's Confidentiality policy, "[c]lient information should not be disclosed, without the client's consent, to any person other than to persons in the firm involved in representing the client or otherwise having a legitimate need for the information." (Pl. depo., Exh. 25).

8.     While employed at Mayer Brown, plaintiff was provided with computer, internet, and e-mail access for purposes of doing firm business. (Pl. depo. 65:24-66:3).

9.     Plaintiff was assigned a unique computer log-on ID, which gave her access to Mayer Brown's computer network. (Pl. depo. 135:3-7).

10.    On May 22, 2008, Mr. Arado, along with Mary Mandeville, a member of the Firm's Committee on Professional Advancement, met with plaintiff to discuss her employment. (Arado depo. 141:2-15). During this meeting, Mr. Arado informed plaintiff that she was being asked to leave the Firm because partners and clients had lost confidence in her abilities. (Pl. depo 284:5-21; Mandeville depo. 52:13-17[3]).

---

[3] The relevant passages from the Mandeville deposition are appended hereto as Exhibit B.

11. Consistent with the Firm's standard practice when it asks an associate attorney to leave for work-related reasons, plaintiff was given 90 days (with some leeway for an extension) to secure another position, so as to permit her to resign and immediately pick up with a new employer. (Mandeville depo. 58:1-6, 68:10-18; Pl. depo. 285:20-286:1).

12. Plaintiff's last day of employment with Mayer Brown was on or around September 5, 2008. (Arado Decl. ¶ 71; Pl. depo. 26:18-23).

13. Between May 22, 2008 and her last day of employment at Mayer Brown in September 2008, plaintiff concedes that she accessed the electronic files of Frank Arado (her supervising partner), Jonathan Barrett (the partner in charge of the Charlotte office), and others while searching Mayer Brown's electronic document management system allegedly for documents regarding the termination of her employment. (Pl. depo. 136:3-19, 139:13-20, 140:1-12). Plaintiff did not tell Mr. Arado or Mr. Barrett that she was accessing their electronic files. (Pl. depo. 136:3-137:20).

14. The searches that plaintiff performed during this time period were for reasons unrelated to her work for Mayer Brown's clients. (Pl. depo. 140:1-12, 144:10-16).

15. After searching Mayer Brown's document management system, plaintiff printed and/or emailed certain confidential and proprietary Firm and client documents to herself. (Pl. depo. 141:18-20).

16. The documents that plaintiff has in her possession (electronically and in hard copy) include information regarding Mayer Brown's business strategies and business initiatives. (Pl. depo. p. 173:19-174:1).

17. For example, plaintiff accessed and printed a report prepared by Frank Arado and sent to several other partners at Mayer Brown discussing Mr. Arado's business development

initiatives in the Charlotte office. The report was not directed to plaintiff, nor was she sent a copy of the report. (Pl. depo. 154:2-17). Plaintiff accessed this document from Mayer Brown's document management system at 1:16 a.m. on August 26, 2008 and printed it one minute later. (Pl. depo. 154:12-25)(discussing documents produced by plaintiff and numbered P. 499-506 and appended hereto in Exhibit C[4]).

18. At 2:16 a.m. on August 26, 2008, plaintiff also accessed and printed from Mayer Brown's document management system the offer letter of an independent contractor retained by the Firm. (Pl. depo. 156:21-157:2)(discussing documents produced by plaintiff and numbered P. 508-510 and appended hereto in Exhibit C).

19. At 1:01 a.m. and 1:03 a.m. on August 26, 2008, plaintiff also accessed and printed from Mayer Brown's document management system a co-worker's self-evaluation memorandum. (Pl. depo. 158:2-13)(discussing documents produced by plaintiff and numbered P. 529-534 and appended hereto in Exhibit C).

20. At 11:54 p.m. and 11:55 p.m. on August 18, 2008, plaintiff also accessed and copied Mayer Brown's 2006 business plan for Bank of America, a Mayer Brown client for which she did not do any work. (Pl. depo. 164:13-20). The document included a listing of the amount of money that Bank of America paid to Mayer Brown in 2005 by practice group, as well as projected fees for the upcoming year. (Pl. depo. 165:7-25)(discussing documents produced by plaintiff and numbered P. 593-618 and appended hereto in Exhibit C). Plaintiff does not consider this fee information to be confidential, but, she acknowledges that she does not know

---

[4] Some of the documents from the Mayer Brown document management and e-mail systems which plaintiff accessed and printed are appended hereto together with a declaration from counsel confirming that the documents were produced by plaintiff during discovery. *See* Exhibit C (filed under seal).

whether the client, Bank of America, would consider it to be confidential, and testified that, even if Bank of America did consider it to be confidential, she does not "have a duty of confidentiality with regard to any of this." (Pl. depo. 165:11-166:21).

21. The foregoing describes only a small number of the documents that plaintiff accessed and printed from Mayer Brown's document management and e-mail systems, and then produced to Mayer Brown in discovery. (Pl. depo. 141:2-143:20; Exhibit C). Electronic copies of these documents may be found in plaintiff's personal home e-mail account or on the hard drive(s) of her personal computers. (Pl. depo. 147:15-148:25).

22. Plaintiff also downloaded, printed and retained even after leaving the Firm emails and attachments from the e-mail box assigned to her by Mayer Brown. When plaintiff produced these documents in discovery, they amounted to more than 6,500 pages of documents. In addition to day-to-day communications with Mayer Brown employees, as evidenced by plaintiff's own privilege log, the documents that plaintiff downloaded, printed and retained from the e-mail box assigned to her by Mayer Brown included privileged and/or confidential communications with or about Mayer Brown's clients. (Exhibit C, ¶ 6).

### III. Argument

**A. Summary Judgment Standard**

Summary judgment is appropriate where the Court determines that there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. IBM Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). In making this determination, the Court must resolve all ambiguities and draw all permissible factual inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986).

The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. *See Anderson*, 477 U.S. at 250, 106 S. Ct. 2505 (1986). As demonstrated more fully below, there are triable issues of fact with respect to Mayer Brown's conversion counterclaim and summary judgment is inappropriate.

**B.     Contrary to Plaintiff's Contention, Mayer Brown's Conversion Counterclaim is Cognizable Under North Carolina Law.**

In North Carolina, a claim for conversion arises out of the common law and is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Spinks v. Taylor*, 303 N.C. 256, 264, 278 S.E.2d 501, 506 (1981), *quoting, Peed v. Burleson, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956). It is of no "importance what subsequent application was made of the converted property, or that the defendant derived no benefit from the act," so long as there has been a denial or violation of the plaintiff's dominion over or rights in the property. *See Lake Mary Ltd. Partnership v. Johnston*, 145 N.C. App. 525, 531, 551 S.E.2d 546, 552 (2001). Here, plaintiff's actions of taking possession of proprietary and confidential Firm and client documents by surreptitiously searching Mayer Brown's electronic files after being notified of her impending termination amounts to a conversion of Mayer Brown's exclusive dominion over its documents. As such, plaintiff's motion for summary judgment should be denied.

7

### 1. Plaintiff's Possession of Mayer Brown's Documents was Unauthorized.

Mayer Brown's computer usage and confidentiality policies are both self-policing. At the beginning of her employment as an associate attorney, with the concomitant obligations to Mayer Brown and its clients, plaintiff acknowledged receipt of Mayer Brown's policies, affirming her understanding that confidential client information should not be disclosed to any person other than to persons in the Firm involved in representing the client or otherwise having a legitimate need for the information, (Pl. depo., Exhs. 24, 25), and affirming her understanding that Firm employees may not access the files or communications of others when there is no substantial business purpose for doing so. (Pl. depo., Exh. 6).

Mayer Brown's policies provide, in effect, that only individuals with a substantial business purpose should access confidential client and Firm documents. Thus, in searching for, accessing, copying, printing and possessing confidential Firm and client documents, for which she had no legitimate work-related need, plaintiff exceeded the scope of her legitimate access to Mayer Brown's document management system. Indeed, it is undisputed that, when plaintiff searched for, accessed, copied, printed and obtained possession of the documents which form the basis of Mayer Brown's conversion counterclaim, plaintiff had been informed of her impending termination from the Firm and she was not performing *any* client-related work for Mayer Brown. *See* Statement of Material Facts ("Facts"), *supra*, ¶10.

Plaintiff argues that she was authorized to access and copy Mayer Brown's documents because "whoever created the Mayer Brown system gave [her] permission because [she] had access to it." (Pl. depo. p. 151:14-20). Plaintiff's circular argument that she is allowed to have access because she had access is absurd, and is contradicted by both common sense and the computer use and confidentiality policies that plaintiff acknowledged governed her employment

when the Firm hired her to be an associate attorney in its Charlotte office. (Pl. depo., Exhs. 5, 6, 24, 25). Pursuant to those policies, plaintiff was expressly prohibited from accessing the files or communications of others unless she had a substantial business purpose. *See* Facts, *supra*, ¶¶ 2-7. Here, plaintiff had no such business purpose, and she offers no facts establishing that she ever had any such business purpose.

North Carolina courts have held that what constitutes "unauthorized" possession or interference with another's ownership of goods or chattels depends upon the circumstances under which such interference arose. *See Madey v. Duke Univ.*, 336 F.Supp.2d 583 (M.D.N.C. 2004); *Binkley v. Loughran*, 714 F. Supp. 776 (M.D.N.C. 1989), *aff'd*, 940 F.2d 651 (4th Cir. 1991). For example, in *Griffith v. Glen Wood Co.,* 184 N.C. App. 206, 646 S.E.2d 550 (2007), the North Carolina Court of Appeals held that an action for conversion may exist if leased goods are used in a manner that is a "major or serious" departure from the use authorized by the lease. As a Mayer Brown employee, plaintiff was permitted to use Mayer Brown's document management system. But, the scope of plaintiff's authorization was restricted to documents for which she had a substantial business purpose. (Pl. depo. Exhs. 5, 25). It is therefore a triable issue of fact whether plaintiff was authorized to access, and take and retain possession of Mayer Brown's confidential client and Firm documents simply by nature of her status as a Mayer Brown employee. Indeed, the Court can infer that plaintiff knew she was not permitted to access those documents from the fact that she searched, e-mailed, downloaded and printed documents in the wee hours of the morning, when few if any other Mayer Brown attorneys and employees may have been on the system.

## 2. Plaintiff's Unauthorized Possession of Confidential and Proprietary Firm and Client Documents Violates Mayer Brown's Property Rights.

At its core, conversion "is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner." *Lake Mary Ltd. P'ship*, 145 N.C. App. at 532, 551 S.E.2d at 552. The general rule is that a conversion occurs when "some act is done which is a denial or violation of the plaintiff's dominion over or **rights in the property**." *Id.*, *citing* 18 Am. Jur. 2d, Conversion, § 1, p. 158 (emphasis added). Here, plaintiff contends that there is no conversion because she did not delete or destroy any documents and has not denied Mayer Brown access to any of its documents. *See* Plaintiff's Motion, p. 4 (Dkt. Entry 74). Rather, she asserts that she only copied the documents, but, that the documents in question remained in the possession of Mayer Brown.

Plaintiff is incorrect because she ignores: (a) the fact that Mayer Brown has the exclusive right to control its documents and client information; and (b) a conversion occurs when Mayer Brown is denied its exclusive rights in that property.[5] *See Lake Mary Ltd. P'ship*, 145 N.C. App. at 532, 551 S.E.2d at 552, *citing* 18 Am. Jur. 2d, Conversion, § 1, p. 158. Here, the value is in the confidential information itself and plaintiff converted Mayer Brown's property right of exclusive use when she took possession of that information by e-mailing it to herself and a second conversion occurred when she printed it and possessed it in hard copy, even after leaving the Firm. That the information may have existed on the Firm's document management and e-mail systems in other forms even after her conversion is not dispositive once she denied Mayer Brown exclusive use of that information. Indeed, a conversion even occurred on plaintiff's faulty logic because, in today's world of electronic information, "[i]f data are stored in a computer or

similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.'" *See* Fed. R. Evi. 1001(3). Here, each time she downloaded and printed an electronic document, she converted an "original." That conversion continues because she continues to possess the documents even after leaving the Firm.

Moreover, contrary to plaintiff's contention, under North Carolina law, a conversion claim may proceed even when an owner retains possession of the converted property, where the tortfeasors acts are inconsistent with the owner's rights. *See Stratton v. Royal Bank of Can.*, 2010 NCBC 2, 2010 NCBC LEXIS 1 (February 5, 2010), *affirmed*, 712 S.E.2d 221, 2011 N.C. App. LEXIS 733 (finding Delaware law instructive, and noting that even though a stockholder remains in possession of a stock certificate, a corporation may tortiously convert the shareholder's stock by acting inconsistently with the shareholder's rights, regardless of whether the shareholder had knowledge of the conversion).

Plaintiff's actions – of accessing, copying, printing and possessing documents for which she had no business purpose, even after leaving the Firm – is an interference with Mayer Brown's property rights over its documents. Mayer Brown maintains exclusive ownership rights over its documents and it, alone, has the right to grant access or authorize their use. Mayer Brown's exclusive use of its documents is an intangible property right, and a jury may conclude that plaintiff violated Mayer Brown's rights by copying and possessing Mayer Brown's proprietary Firm and client documents.

Plaintiff's reliance on *DirectTV, Inc. v. Benson*, 333 F. Supp.2d 440 (M.D.N.C. 2004), is misplaced. The court did conclude there that North Carolina law did not support a conversion

---

[5] Of course, Mayer Brown's clients also have a property interest in their information on Mayer Brown's document management and e-mail systems. Plaintiff ignores this property right as well.

11

claim, but the property right at issue there was a very different kind of intangible property interest – satellite signals. In stark contrast, the property plaintiff converted here is the physical manifestation of Mayer Brown's confidential business and client information. Plaintiff converted Mayer Brown's documents (tangible property) in which intangible rights (Mayer Brown's exclusive property ownership interest) were merged. *See e.g.,* Restatement (Second) of Torts § 242 (1965).

Under the Restatement (Second) of Torts § 242 (1965)[6], an intangible interest is "merged" in a document when, "by the appropriate rule of law, the right to immediate possession of a chattel and the power to acquire such possession is represented by [the] document." *See Menalco v. Buchan*, 2010 U.S. Dist. Lexis 8042 (D. Nev. 2010)(denying summary judgment on conversion claim, where intangible property, software, merged into tangible items in the form of a point-of-sale terminal and smart card); *Farmers State Bank v. FFP Operating Partners, L.P.,* 935 P.2d 233 (Kan. App. 1997)(allowing a claim for the conversion of intangible rights (a security interest) without the conversion of the actual document evidencing those rights); *see also Margae, Inc. v. Clear Link Techs. L.L.C.*, 620 F. Supp.2d 1284 (D. Utah 2009)(conversion law applied to web pages, where web page has a physical presence on a computer drive, causes tangible effects on computers, and can be perceived by the senses). At the time plaintiff copied and took possession of Mayer Brown's documents, plaintiff had no business purpose to possess those documents, and Mayer Brown was therefore entitled to the exclusive ownership of its documents. Plaintiff's actions altered Mayer Brown's exclusive ownership. As a result, Mayer Brown's conversion claim should be allowed to proceed to a jury.

---

[6] The Restatement of Torts is not yet controlling but is persuasive in North Carolina. *See Cassell v. Collins*, 344 N.C. 160, 163, 472 S.E.2d 770, 772 (1996), *overruled in part, Nelson v. Freeland,* 349 N.C. 615, 507 S.E.2d 882 (1998).

## IV. Conclusion

Based on the foregoing, defendant Mayer Brown, by counsel, requests the Court to enter an Order denying plaintiff's Motion for Summary Judgment and granting such further relief as the Court deems just and proper.

This the 28th day of November 2011.

Respectfully submitted,

MCGUIREWOODS LLP

/s/ Makila Sands Scruggs
Bruce M. Steen (N.C. Bar No. 30222)
bsteen@mcguirewoods.com
Makila Sands Scruggs (N.C. Bar No. 37212)
mscruggs@mcguirewoods.com
MCGUIREWOODS LLP
201 North Tryon Street
Charlotte, North Carolina 28202
704.353.6244
704.353.6200 (Facsimile)

Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaim with the Clerk of Court using the CM/ECF system, which will send notice of such filing to counsel to plaintiff:

>Julie H. Fosbinder
>501 East Morehead Street, Suite 1
>Charlotte, North Carolina 28202

This the 28th day of November 2011.

>　　　　　　　/s/ Makila Sands Scruggs　　
>　　　　　　　　　　　Attorney