# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:09cv352

| | |
|---|---|
| VENUS Y. SPRINGS,          )<br>                            )<br>        Plaintiff,          )<br>                            )<br>Vs.                         )<br>                            )<br>MAYER BROWN, LLP,           )<br>                            )<br>        Defendant.          )<br>_____ ) | MEMORANDUM OF<br>DECISION AND ORDER |

**THIS MATTER** is before the court on review of plaintiff's Motion for Summary Judgment (#74) and defendant's Motion for Summary Judgment (#75). Both motions ripened for decision on December 8, 2011, with the filing of replies by the respective proponents of such motions. Oral arguments were heard on January 25, 2012. Having carefully considered the cross motions for summary judgment, the briefs, and heard the excellent arguments of counsel, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

**I.    Background**

Plaintiff alleges that defendant *Mayer Brown, LLP* (hereinafter "Mayer Brown") terminated her employment as an associate attorney because of her race,[1] in violation of Title VII of the *Civil Rights Act of 1964*, as amended, 42 U.S.C. §§ 2000e, *et seq.* (hereinafter "Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and North Carolina public policy, as expressed in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. §§

---

[1]    It is undisputed that plaintiff is African-American and was hired by the Charlotte office of Mayer Brown in July 2007. First Amended Complaint (#18), at ¶ 9.

143-422.1 *et. seq.* See Amended Complaint, ¶¶ 44, 49 (#18), Title VII Complaint, ¶ 45 (#1) (consolidated from 3:10-CV-00385).

Earlier in this action, the court dismissed plaintiff's Section 1981 claim for racial harassment, but denied Mayer Brown's Motion to Dismiss as to plaintiff's Section 1981 and state law claims for racial discrimination, and dismissed all claims against the then-named managing partner. See Order (#23). After entry of that Order, plaintiff filed a new, separate action in this court against Mayer Brown and the dismissed managing partner in which she alleged that Mayer Brown harassed her and terminated her employment based on her race based on Title VII, rather than Section 1981. See Complaint (#1)(Civil Action No. 3:10-CV-00385). The court consolidated the two actions on September 7, 2010, (#29), and on January 26, 2011, the court dismissed plaintiff's claims for racial harassment under Title VII and again dismissed all claims asserted against the managing partner. (#37). Plaintiff's only surviving claims are, therefore, for wrongful discharge against Mayer Brown.

In moving for summary judgment on such surviving claims after the close of discovery, Mayer Brown contends that plaintiff cannot prove a *prima facie* case of wrongful discharge because she cannot establish that she was replaced by a person outside the protected class or that she was meeting the legitimate expectations of Mayer Brown at the time of her discharge. Mayer Brown further contends that plaintiff cannot establish that the legitimate, non-discriminatory reason given for her termination - - poor job performance - - was a mere pretext for racial discrimination.

Plaintiff has also moved for summary judgment on Mayer Brown's counterclaim for conversion (a state common-law claim) of its electronically-stored documents. According to Mayer Brown, during the 90 day period it allowed plaintiff to remain employed, plaintiff

admittedly accessed defendant's electronically stored documents, and printed out or sent to her private email account copies of firm documents, including documents on legal matters she had not worked on and confidential documents concerning the firm's business plan. Defendant contends that plaintiff has refused to return these documents.

In moving for summary judgment, plaintiff contends that Mayer Brown can present no evidence of either element of common law conversion, arguing that conversion is not the acquisition of property, but the wrongful deprivation of property from the owner. She contends that there has been no destruction or deprivation of access as the documents remain on Mayer Brown's computer and that no conversion has, therefore, occurred.

## II. Summary Judgment Standard Generally

Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). Rule 56 goes on to provide procedures for a party to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible**

> **Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial.[2] Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id., at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are

---

[2] The court notes and commends the exceptional job by counsel for Mayer Brown in providing the court with a statement of undisputed facts, which the court believes is the appropriate avenue for presentation of facts under newly revised Rule 56.

reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

### III. Discussion

#### A. Mayer Brown's Motion for Summary Judgment

As provided in the court's previous Orders, plaintiff's only remaining claims are for wrongful discharge based on race. While plaintiff has asserted claims for wrongful discharge under Section 1981, Title VII, and North Carolina law, the standard for establishing a wrongful discharge is the same under all three provisions. See White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995).

Plaintiff has presented no direct evidence of discrimination under Title VII; thus, to survive summary judgment, plaintiff must establish a *prima facie* case of discrimination under a burden-shifting analysis. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show that there were legitimate, non-discriminatory reasons for the employment decisions. If an employer satisfies that requirement, the burden then shifts back to the plaintiff to show that the employer's proffered reasons are false and a pretext to conceal intentional unlawful discrimination. McDonnell Douglas Corp. v. Green, 411

U.S. 792 (1973).

While plaintiff's wrongful discharge claims survived defendant's motions to dismiss, to survive summary judgment, plaintiff must now establish a *prima facie* case of wrongful termination based on race. A *prima facie* case of wrongful termination requires the plaintiff to now present evidence upon which a reasonable jury could find that:

> (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005); see also Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007).

### 1. The First and Second Elements of a *Prima Facie* Case

It is undisputed that plaintiff, an African-American, is a member of a protected class, First Amended Complaint (#18), at ¶ 9, and that she suffered an adverse employment action when her employment was terminated in 2008. Id., at ¶ 26. No evidence has been submitted that would put either of the first two elements in controversy.

### 2. The Fourth Element of a *Prima Facie* Case

As to the fourth element, plaintiff alleges that she was replaced by one of three Caucasian attorneys who were hired around the time that her employment ended. Id., at ¶39. One of these three new employees was a former Bank of America employee, whom plaintiff alleges was hired as a *quid pro quo* for an increase in business from Bank of America, an act which the plaintiff alleges is "tantamount to commercial bribery." Id. The other two attorneys had served as summer associates for the firm and were hired as permanent associates prior to the end of the plaintiff's employment in September 2008. Id., at ¶30. Mayer Brown contends that plaintiff cannot satisfy her burden on the fourth

element as she cannot show that her position was filled by a person outside the protected class, see Defendant's Memorandum in Support (#75-1, at p. 14), and points to it Statement of Undisputed Facts, specifically the following paragraphs:

> 37. No one was hired to replace plaintiff in performing (or being available to perform) securitized lending transactions in the Charlotte office. (Arado Decl. ¶ 72).
>
> 38. Plaintiff's primary work for Mayer Brown had been in the area of work for which she had been hired – real estate lending. (Pl. depo. 230:2-5). In the weeks and months leading up to her discharge, because of her poor performance, partners and clients of the Firm with this type of work had all but decided not to utilize plaintiff, such that at the time of her termination, she was engaged in very little if any client-chargeable work. (Arado Decl. ¶¶ 65, 73).
>
> 39. At the same time, the demand for originating real estate loans intended for securitization lending transactions was severely reduced due to the global economic downturn. Even today there is little to none of this type of real estate work in the Firm generally, and the Charlotte office more specifically. (Arado Decl. ¶ 74).

Defendant's Memorandum in Support (#75-1), at pp. 11-12. In response, plaintiff argues that

> [w]ithin weeks of Springs' departure, three white attorneys were hired in the Real Estate group, one a former Bank of America employee, Erin Bruenig, who was hired on a contract basis just before Springs['] last days of employment. Since Springs' termination, Mayer Brown and Frank Arado have continued to add white attorneys to the real estate department, including Matt Conway, Lauren Rico, Sara Brown, and Amanda Christie (Arado pps. 57, Exh. "O, Interrogatory responses). Arado also admitted that as of November, 2010, in spite of the financial crisis, his department now has a headcount of eight attorneys. (Arado p. 76)

Plaintiff's Memorandum in Opposition (#83), at p. 18. In reply, Mayer Brown has submitted evidence that the associates it did hire were entry level, first year associates who, unlike plaintiff, had no experience in loan origination for securitization or mezzanine lending (see defendant's Reply (#85), at 2-3 (citing Arado Decl., at ¶¶ 78,80)), and that Ms. Bruenig's position as a contractor was very different than the position plaintiff held at the

-7-

firm. Id., at 3. The court there to be a genuine issue of material fact as to whether plaintiff was replaced by someone outside the protected class.

While the parties have focused on the second part of the fourth element which concerns whether plaintiff was replaced by a Caucasian attorney, little if any discussion has been devoted to whether the position "remained open," a showing of which would be sufficient to satisfy the fourth element. See also Hill v. Lockheed Martin Logistics Management, Inc., 354 F.3d 277, 285 (4th Cir. 2004). Defendant's own statement of undisputed facts provides that "[n]o one was hired to replace plaintiff in performing (or being available to perform) securitized lending transactions in the Charlotte office. (Arado Decl. ¶ 72)." Defendant's Memorandum in Support (#75-1), at p. 11. Clearly, such evidence would be sufficient for a jury to determine whether plaintiff's position "remained open," thereby satisfying the fourth element.

### 3.      The Third Element of a *Prima Facie* Case

Defendant has not directly argued the third element of a *prima facie* case, but has instead argued such element in the context of its legitimate, non-discriminatory reason for terminating plaintiff's employment.[3] Thus, for the purposes of the instant motion, the court will deem that plaintiff has stated a *prima facie* case and consider in the pretext analysis whether there is evidence that plaintiff was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action was taken.

### 4.      Pretext

Defendant has cited to plaintiff's job performance as the legitimate, non-

---

[3] Defendant notes in its Reply in rebuttal to plaintiff's argument against a legitimate, non-discriminatory reason that "[f]or these same reasons, plaintiff also cannot establish the third prong of her prima facie case – that she was performing her job to her supervisor's legitimate expectations." Defendant's Reply (#85), at f.n. 3.

discriminatory reason for terminating plaintiff's employment. Defendant's burden at this stage is not one of persuasion, but merely one of production under the burden-shifting scheme of McDonnell Douglas Corp., supra. If Mayer Brown successfully proffers such an explanation, the burden then shifts back to plaintiff to show that the proffered reason is merely a pretext. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993).

In support of such contention, defendant has presented evidence that it hired plaintiff to primarily perform real estate lending transactions, in particular originating real estate loans intended for securitization:

> Plaintiff understood that her experience in mezzanine lending and doing bank lender's work was of value to Mayer Brown. (Pl. depo. 203:2-13). Indeed, Arado expected that plaintiff's primary focus at Mayer Brown would be real estate lending transactions, in particular originating real estate loans intended for securitization, which at the time included mezzanine loans. (Arado Decl. ¶ 19).

Defendant's Memorandum in Support (#75-1), at p. 12. Defendant has also presented evidence that at the time it terminated plaintiff's employment in May 2008, she was not meeting its legitimate expectations in performing such job duties:

> In the weeks and months leading up to her discharge, because of her poor performance, partners and clients of the Firm with this type of work had all but decided not to utilize plaintiff, such that at the time of her termination, she was engaged in very little if any client-chargeable work. (Arado Decl. ¶¶ 65, 73).

Id., at 11-12. In addition, defendant has presented evidence that

> Following his April meeting with plaintiff, Arado solicited email views of plaintiff's performance from partners who had worked with her. (Arado Decl. ¶ 64). After reviewing emails including the partners' assessments of plaintiff's work, and based upon his own view of plaintiff's poor communication with partners, poor attitude, sub-par work performance, lack of availability, and the fact that the very partners who could have provided her with real estate lending work had lost confidence in her abilities and would no longer utilize her on their transactions, Arado decided to terminate plaintiff's employment. (Arado depo. 182:20-23). Before implementing his decision, Arado discussed the matter with his real estate Firm practice group

leaders and Barrett. (Arado Decl. ¶ 67).

Id., at 10-11. In response to all of the facts proffered by defendant, defendant has responded that such were merely a pretext for discrimination based on race.

### a. Presumption that the Termination was not Pretextual

Plaintiff first contends that no inference can be drawn against racial animus from the fact that Mr. Arado made the decisions to both hire and fire plaintiff in less than 12 months because others were involved in the decision to hire her. Plaintiff's Memorandum in Opposition (#83), at p. 3. While it is clear that Mr. Arado may well have consulted with others during the hiring and firing process, the only evidence before the court is that Mr. Arado was the ultimate decision maker as to plaintiff's employment at Mayer Brown. See Arado Depo., at 28:2-4; Statement of Undisputed Facts, ¶ 3 (#75). As Mr. Arado both hired and fired plaintiff within 12 months, a rebutable presumption arises in favor of defendant under Proud v. Stone, 945 F.2d 796 (4th Cir. 1991), that the adverse employment action was not pretextual as Mr. Arado both hired and fired plaintiff in close temporal proximity. Id.

### b. Plaintiff's Evidence of Good Work

Plaintiff next contends that poor job performance is pretext for racial discrimination because she has evidence of good work performance. Plaintiff's Memorandum in Opposition (#83), at p.4. Much of this evidence plaintiff relies on consists of her own opinions as to the quality of her work, her own speculation, statements made in contradiction to her deposition testimony, and otherwise inadmissible evidence.

#### 1. Dean Isaacs

Plaintiff contends that a partner in Mayer Brown's Chicago office, Dean Isaacs, reported to her in early February 2008 that another partner told him that she "just got it

right" and that he agreed with that partner. Id., at p. 5. Plaintiff asserts that Isaacs sent an email on February 19, 2008, telling Arado that plaintiff's "work on two deals was 'really about as good as I would get from any other associates/counsel I work with.'" Id., at pp. 13-14.

Plaintiff also relies on a February 27, 2008, e-mail that Isaacs sent to plaintiff and two other Mayer Brown employees in which Isaacs states:

> Among the 3 of you, I would still expect you to bill an aggregate of another 160 hours, and continue to do a top-notch job on whatever work that remains.

Id. Even assuming that such comment and emails were positive and reflected well on plaintiff, such email in and of itself does not refute Isaacs' post February 2008 reports to Arado in which he expressed concerns about plaintiff's performance, reported that it continued to diminish and described it as "mediocre." Arado Decl., ¶¶ 54, 55, 64. Further, such earlier praise does not diminish Isaacs' April 23, 2008 e-mail to Mayer Brown's billing specialist, copying Arado, in which he writes off all of the time that plaintiff billed to the client for that transaction, citing the "very poor job" that plaintiff had done. See Statement of Undisputed Facts, ¶ 24 (#75). While an aggrieved employee may be able to point to co-workers and customers who offered praise for good work, such a showing does not demonstrate pretext as it is the perception of the decision-maker which is relevant. Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 444 (4th Cir. 1998).

### 2. Kelly Ryan

Plaintiff also takes issue with the job performance portrayed to her by partner Kelly Ryan and the job performance such partner portrayed to Arado concerning the time Ryan and plaintiff worked together. Even assuming that plaintiff could testify that Ryan praised her work privately and that such testimony would be admissible, plaintiff has not disputed

that Ryan subsequently told Arado in March and April 2008 that he had serious concerns regarding plaintiff's performance, including her combativeness, responsiveness, attention to detail, and attentiveness to deadlines. See Statement of Undisputed Facts, ¶¶ 27-28 (#75). Under relevant case law, it is the perception of the decision maker which is relevant:

> we have repeatedly explained that "'[i]t is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." Accordingly, the plaintiff's "perception of [her]self . . . is not relevant." Similarly, that plaintiff's coworkers may have thought that [she] did a good job, or that [she] did not 'deserve' [to be discharged], is close to irrelevant."

DeJarnette v. Corning Incorporated, 133 F.3d 293 (4th Cir. 1998)(citations and quotations omitted).[4]

### 3.  Doug Wisner

Plaintiff also posits that another partner, Doug Wisner, was pleased with plaintiff's work on another transaction in the New York office. According to plaintiff, Wisner told her that she had done an "excellent job" on that project in October 2007. Plaintiff's Memorandum in Opposition (#83), at p. 5. Even taking this 2007 statement as true, it is undisputed that Wisner subsequently complained to Arado that he had received several calls from the client expressing frustration with plaintiff's handling of the transaction, and that the client found plaintiff to be difficult to work with and obstreperous. Statement of Undisputed Facts (#75), ¶ 15. Plaintiff also does not dispute that Wisner reported to Arado that plaintiff "did not instill confidence in the client or in me." Id. Even taking plaintiff's contentions as true that the client in that transaction wrote in an e-mail that Mayer Brown did a "great job" on the transaction, that Wisner sent her to close the transaction, and that

---

[4] Plaintiff has also offered the affidavit of her private investigator, who allegedly interviewed the client's principals in the transaction that plaintiff and Ryan worked on. Such affidavit is inadmissible as a matter of well settled law. Maryland Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991).

-12-

Wisner allegedly subsequently gave her additional work, see Plaintiff's Memorandum in Opposition (#83), at p. 13, such does not undermine the fact that Wisner later voiced concerns to Arado. Indeed, the evidence of record shows that in-house counsel for the client complained directly to Arado about plaintiff's handling of the transaction, reporting that the business people involved had been appalled by plaintiff's behavior during the transaction and that plaintiff had threatened the viability of the transaction. Statement of Undisputed Facts (#75), ¶ 17.

### c. Other Evidence Cited by Plaintiff in Support of Pretext

#### 1. Charging for Plaintiff's Time

Plaintiff argues that because Mayer Brown billed clients for her work, its reliance on poor job performance is pretext. Plaintiff's Memorandum in Opposition (#83), at p. 6. Plaintiff offers no citation to any case where simply charging clients for work done by a later terminated employee was considered evidence of pretext. Indeed, the evidence of record indicates that plaintiff's employment was terminated immediately following a decision by a partner to write off plaintiff's billable time for work done on the DVU matter, as discussed above.

#### 2. State Bar Admission Affidavit

Plaintiff also points to an affidavit Avado submitted in support of plaintiff's application for admission to the New York State Bar. On April 24, 2008, Arado filed an affidavit with the New York State Court, Appellate Division, regarding plaintiff's performance and suitability as a "waive-in" candidate for admission to the New York Bar. See Application for Admission, Form Affidavit (#82-9). In his affidavit, Arado avers that he supervised plaintiff and that her duties were "satisfactorily" performed. Id., at ¶ 4. In Reply, defendant argues the fact " that plaintiff had the requisite skills, etc., to practice law

is a far cry from a conclusion that she deserved to remain employed at Mayer Brown." Defendant's Reply (#85), at p. 12. This interpretation of the averment made is problematic, as the statement made by Avado to the New York State Bar was in close temporal proximity to firing plaintiff and was an under-oath representation to a state licensing body that "Applicant's duties were satisfactorily performed." See Application for Admission, Form Affidavit (#82-9), at ¶ 4(c).

Such affidavit constitutes some evidence that the given reason of the decisionmaker was pretextual. Whether such will be sufficient for a jury to find pretext is not for this court to weigh. As the Supreme Court has made clear:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is required," 970 F.2d, at 493 (emphasis added). But the Court of Appeals' holding that rejection of the defendant's proffered reasons compels judgment for the plaintiff disregards the fundamental principle of Rule 301 that a presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the "ultimate burden of persuasion."

St. Mary's Honor Center v. Hicks, 509 U.S. at 511. In Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000), the Supreme Court held that

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.

Id., at 147. The Reeves Court further held that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id., at 148. Finding that such affidavit creates a genuine issue of material fact as to whether the

legitimate, non-discriminatory reason was pretextual, the court will deny defendant's Motion for Summary Judgment.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff has also moved for summary judgment as to defendant's counterclaim for conversion of Mayer Brown's documents. In North Carolina, a common-law claim for conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Spinks v. Taylor, 303 N.C. 256, 264 (1981)(citation and corresponding quotation marks omitted). It is of no "importance what subsequent application was made of the converted property, or that the defendant derived no benefit from the act," so long as there has been a denial or violation of the plaintiff's dominion over or rights in the property. Lake Mary Ltd. Partnership v. Johnston, 145 N.C. App. 525, 531 (2001). In this case, defendants have proffered evidence that plaintiff made paper and electronic copies of digitally stored proprietary and confidential documents by surreptitiously searching Mayer Brown's electronic files after being notified of her impending termination. That plaintiff did not destroy the data base or exclude Mayer Brown from its digitally stored material is of no moment, as what constitutes "unauthorized" possession or interference with another's ownership of goods or chattels depends upon the circumstances under which such interference arose. Madey v. Duke Univ., 336 F.Supp.2d 583 (M.D.N.C. 2004); Binkley v. Loughran, 714 F. Supp. 776 (M.D.N.C. 1989), *aff'd*, 940 F.2d 651 (4th Cir. 1991). Clearly, defendant has presented a forecast of evidence that plaintiff has taken away from the firm things of value that she was not authorized to take, and as to such copies, plaintiff has excluded defendant from exercising the control over its proprietary and/or confidential documents. Finding that a

genuine issue of material fact exists, the court will deny plaintiff's Motion for Summary Judgment.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Summary Judgment (#74) and defendant's Motion for Summary Judgment (#75) are **DENIED**.

Signed: January 27, 2012

Max O. Cogburn Jr.
United States District Judge